## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BETTY L. CASTELLO,**
         **Plaintiff,**

**v.**                                                    **Case No: 5:08cv80/RH/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
               **Defendant.**

_____

### REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Castello's application for disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Betty Castello, filed an application for disability insurance benefits claiming a disability onset date of December 1, 1999.  The application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ).  A hearing was held on February 7, 2007 at which Ms. Castello was represented by counsel and testified.  The ALJ rendered an unfavorable decision (tr. 15-22) and the Appeals Council declined review (tr. 5-8), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Castello met the insured status requirements of the Act only through March 31, 2004; that she had severe impairments of diverticulitis and degenerative changes of the lumbar spine, but did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that she had the residual functional capacity to perform sedentary work; that she could not perform the duties of her prior relevant work; that she was a younger individual with a high school education; that applying medical/vocational Rules 201.27 and 201.28, a significant number of jobs existed in the national economy that she could perform; and that she was not under a disability as defined in the act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed.  *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

In order for Ms. Castello to be able to prove disability, she must show that she was disabled on or before her date last insured, March 31, 2004.  In December 1999, Ms. Castello was diagnosed with plantar fasciitis with heel spur syndrome on her right foot, and Steven J. Tilles, D.P.M., performed an endoscopic plantar fasciotomy with medial and central bands release on December 15, 1999.  Ms. Castello tolerated the procedure well and on March 14, 2000, she reported that her foot felt much better and the heel pain was about gone (tr. 178-79).  On physical examination Dr. Tilles noted minimal pain to palpation of the surgical site and the dorsum of the right foot. There was no soft tissue swelling, an x-ray of the right foot revealed no remarkable evidence of traumatic, metabolic, or infectious bone disease, and Dr. Tilles felt that Ms. Castello had made good progress following the surgery (tr. 177-79).

The record contains treatment records dated May 2001 through February 2002 from an unidentified source, some signed and some unsigned.  They indicate that on July 26, 2001, Ms. Castello complained of a constant, dull low back pain radiating down her legs to her feet, and said that over-the-counter pain relievers provided no relief.  On physical examination Ms. Castello's lumbar paraspinal muscles were tender to palpation, but straight leg raising was negative. Ms. Castello had a mild decrease in lumbar range of motion due to pain which the examiner did not "appreciate on examination,"  (Tr. 205-14).  A July 31, 2001 MRI revealed very mild diffuse disc bulge and mild disc degeneration at L4-5, with no disc protrusion or significant stenosis (tr. 185).

On October 15, 2001, Ms. Castello was seen by Paul Boor, M.D., with complaints of anxiety and low back ache.  On physical examination, she appeared to be moderately anxious, but in no acute distress.  Her lumbosacral spine was mildly tender to palpation with good range of motion and no swelling. Her

extremities were non tender and distal neurovascular examination was intact  (tr. 235-36).

On November 5, 2001, Ms. Castello was seen at the Escambia Community Clinics with complaints of back pain and swelling in her feet, legs, hands, and face. She was diagnosed with degenerative disc disease and prescribed Lortaband Xanax (tr. 203).  On December 6, 2001, she reported that she had stopped taking Lortab. She also reported that an antidepressant worked well for her depression, and that Xanax worked well for her anxiety (tr. 207).  In February 2002, Ms. Castello complained of severe pain in her lower back and right leg, pain in her right foot, and leg swelling.  However, she had no ambulatory deficit and walked without a limp (tr. 205).

On April 9, 2002, Ms. Castello was seen by Terry L. Payne, M.D., with anxiety symptoms and exacerbations of lower back pain.  She denied any numbness or tingling and reported that she was doing well with regard to her depression. On physical examination she had paraspinous tenderness in the lower back, but was in no acute distress.  Straight leg raising was negative and Dr. Payne prescribed a muscle relaxer (tr. 226-27).  Approximately one week later, Ms. Castello returned to Dr. Payne with localized low back pain that was worse with activity and relieved at rest.  Ms. Castello's paraspinous muscles were tender to palpation and she had positive straight leg raising on the right. She had no clubbing, cyanosis, or edema, and her joints were within normal limits.   Dr. Payne assessed sciatica and encouraged strengthening exercises once the acute exacerbation was resolved. He prescribed Lortab and instructed Ms. Castello to continue taking an anti-inflammatory medication and muscle relaxer (tr. 222).  On April 30, 2002, Dr. Payne noted that Ms. Castello had normal movement of all four extremities and was in no acute distress (tr. 220).  On June 4, 2002, Dr. Payne found that Ms. Castello had

normal movement of all four extremities, normal deep tendon reflexes, intact cranial nerves, and no pedal edema (tr. 216-17).

On August 29, 2002, James E. Hord, Jr., Ph.D., a psychologist, performed a consultative psychological examination. Ms. Castello reported that she suffered from anxiety and nervousness and described herself as being "very depressed . . . a lot." (Tr. 241).  Dr. Hord noted that Ms. Castello cried quite often, but her behavior was appropriate.  Her speech was clear, with no loosening of association in her thought processes or indication of perceptual disorder.   Ms. Castello was positive and cooperative during the examination.  Her sensorium and cognitions appeared clear, she was oriented times three, and her memory appeared to be intact.  Dr. Hord diagnosed dysthymia and rule out dependent personality disorder.  He opined that Ms. Castello was a "very neurotic lady," but her suffering from dysthymia was significant (tr. 240-42).

From January 12, 2003, through January 18, 2003, Ms. Castello was hospitalized for multiple urological procedures, including a cystoscopy and bilateral retrogrades performed by Mark W. Fischer, M.D., and a second cystoscopy with installation of silver nitrate, left retrograde ureterogram, balloon dilation of left ureter, ureteroscopy, and placement of double J stent performed by Joseph C. Clements, M.D., a urologic surgeon. Ms. Castello tolerated all surgical procedures. At the time of discharge, she was diagnosed with mild obstruction and diverticulum of upper pole of left kidney. She was prescribed Lortab and Macrodantin, and instructed to return in three weeks for the removal of the double J stent (tr. 262-78).

In a letter dated February 5, 2003, Dr. Clements wrote that Ms. Castello underwent dilation of her kidney and her ureter with placement of a stent.  He also noted that Ms. Castello had "a history of problems with back pain with history of an injury to her back and apparently to her foot as well that has rendered her unable to

work," and that she was "currently unemployed, is disabled and has no insurance."
(Tr. 279).

From February 8, 2003, through February 19, 2003, Ms. Castello was again
hospitalized.  She underwent a cystoscopy, bilateral retrogrades, balloon dilation of
the left uretral stricture, left ureteroscopy, and placement of left double J stent
performed by John Peacock, M.D.  X-rays of the lumbar spine taken while she was
hospitalized revealed no significant abnormalities of alignment, very minimal
marginal osteophytic changes present at several levels, no spondyloysis, and no
spondylolisthesis.  The impression was minimal degenerative changes with no acute
findings.  The discharge diagnosis was left ureteral stricture with partial duplication
and dilation of upper pole segment, acute diverticulitis, and chronic low back pain
(tr. 280-98).

On October 18, 2004, Ms. Castello went to the emergency room complaining
of pain radiating from her left lower quadrant around to her back.   On physical
examination her extremities were non-tender with normal range of motion.  She had
no motor or sensory deficits and her cranial nerves were normal. The emergency
room physician's impression was diverticulitis (tr. 317-18).

Nine months after her date last insured, on January 5, 2005, Ms. Castello
underwent a consultative psychological examination performed by Kent Rowland,
Ph.D.  She reported concentration and memory difficulties, lack of energy, loss of
interest, racing thoughts, crying spells, and anhedonia.  Ms. Castello stated that she
went grocery shopping, watched television, and read.  She was able to dress herself,
take care of her own hygiene, and fix meals with occasional help.   On mental
examination Ms. Castello's affect was labile and ranged from depressed, blunted,
smiling, and tearful.  Her thought flow was logical, coherent, and cohesive.  She
reported that she was quite nervous, but her affect, bodily posture, and movement
did not appear to confirm the degree of nervousness which she claimed.   Dr.

Rowland opined that Ms. Castello appeared to have plenty of physical and emotional energy.  He also noted that Ms. Castello seemed "a bit histrionic, exaggerating her symptoms," but he did not believe she was lying.  He diagnosed dysthymic disorder; rule out anxiety disorder, not otherwise specified; and rule out post traumatic stress disorder.  He assessed a Global Assessment of Functioning (GAF) of 65 (tr. 304-08).

*A*fter a fall in February 2005, a May 15, 2005 lumbar spine MRI revealed mild focal disc degeneration at L4-5 with disc desiccation, mild disc space narrowing, and circumferential disc bulge; and slight posterior broad-based annular disc bulge at L5-S1.  There was no focal disc protrusion, central canal stenosis, or foraminal narrowing in the lumbar spine (tr. 338-39, 341-42).

## PLAINTIFF'S TESTIMONY

At the February 7, 2007 hearing before the ALJ Ms. Castello stated that her past jobs were generally of short duration and that she usually quit these jobs in order to avoid being terminated.  She claimed to have experienced back problems for 15 years and had problems completing a full work day or work week. She rated her pain on an average day in 2004 as 7 out of 10, and experienced pain so severe that she could not get out of bed three or four days per week.  She could not stand or sit for more than 15 or 20 minutes, could not lift more than five pounds, and could only drive 10 miles. She had to lie down three or four times per day, and used a cane that was not prescribed (tr. 418-44).

## DISCUSSION

Ms. Castello argues that the ALJ erred in failing to state with particularity the weight he assigned to the opinion of Dr. Clements and in improperly applying the medical/vocational guidelines, and that she was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by

substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled on or before her date last insured, March 31, 2004, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

      1.    <u>Dr. Clements' opinion.</u>

      Ms. Castello first contends that the ALJ failed to state how much weight he gave to the opinion of Dr. Clements, and that by doing so he accepted that opinion as a matter of law.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

      If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Dr. Clements stated in a letter dated February 5, 2003 and addressed "To Whom It May Concern" that he had dilated Ms. Castello's ureter and placed a stent three weeks prior, that she had a history of problems with back pain, and injury to her back and foot "that has rendered her unable to work," and that she was currently "disabled." (Tr. 279).[2]  The ALJ did not discuss this letter at all, nor did he mention Ms. Castello's hospitalizations for urinary surgery.  On its face, therefore, it would appear that her contention has merit.  On closer examination, however, that initial assumption does not hold up, because Dr. Clements' stated opinions are not of the type that the ALJ must address.

The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.   The Commissioner's regulations and the interpretations of those regulations clearly

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[2] The document at page 279 of the original transcript in partially illegible.  The Commissioner provided a clean copy that appears in the Supplemental Certification dated October 24, 2008.

provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  *See also* 20 C.F.R. § 416.927(e).  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

In this case it would have been helpful for the ALJ to have addressed Ms. Castello's urinary problems and treatment, and Dr. Clements' letter, but any failure to do so, if error, was harmless.  Dr. Clements' opinions were of very little probative value, if any.  They were legal conclusions, not medical opinions.  Also, Dr. Clements obviously based his opinion on what Ms. Castello told him about her back and foot problems.  This was unhelpful to the ALJ for two reasons.  First, Dr. Clements is a urologist, not a podiatrist or orthopedic surgeon.  20 C.F.R. 404.1527(d).  When he wrote the letter he had just released Ms. Castello from the hospital after the urinary surgery, and there is nothing in the administrative record to show that Ms. Castello had subsequent urinary problems after her second surgery.  Therefore, Dr. Clements logically cannot have been basing his opinion of the area of his own specialty.

Second, the medical record, taken as a whole, does not support a finding that either Ms. Castello's foot problem or her back problems were significantly limiting. After her 1999 foot surgery the plantar fasciitis and heel spur problems were never mentioned again.  Ms. Castello testified that her back pain was so severe that she at times stayed in bed for three or four days at a time, but there is nothing in the medical records to support a claim of disabling subjective pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

---

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The ALJ used this approach, noted the medical record, and found that while Ms. Castello's determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning their intensity, persistence, and limiting effects were not entirely credible (tr. 18).  Indeed, a July 2001 lumbar MRI was read as showing only a very mild disc bulge and mild disc degeneration.  The reading of a 2005 MRI, done when she fell down nearly a year after her date last insured, was not significantly different.   No physician opined that she was significantly limited by her back problems, and other than a single finding of positive straight leg raising, there were no objective medical findings that would support the severity of her subjective complaints of pain.   The ALJ did not err in failing to discuss, much less to give controlling weight to, the opinions stated in Dr. Clements' letter of February 5, 2003.  Ms. Castello is not entitled to reversal on this ground.

2.    Medical/vocational guidelines.

Ms. Castello also contends that the ALJ erred in mechanically applying the medical /vocational guidelines in determining that she was not disabled.  In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00.   "Where a plaintiff's qualifications correspond to the job

requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform.  If such work exists, the plaintiff is not considered disabled."  *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983).  However,"where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case ...."  20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a).  Thus, each of these findings must be supported by substantial evidence.

Once a claimant shows that her impairment prevents her from performing her past relevant work, the burden shifts to the Commissioner, "who must produce evidence to show that the claimant is able to perform alternative substantial gainful work that exists in the national economy." *Cowart v. Schweicker*, 662 F.2d 731, 736 (11th Cir.1981).  An ALJ may use the grids to aid in determining "whether [a] claimant has the ability to adjust to other [jobs] in the national economy."  *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40. The grids are:

> a series of matrices which correlate a set of variables-the claimant's residual functional capacity ( i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985) (per curiam).  "In appropriate circumstances, the grids may be used" instead of the testimony of a Vocational Expert ("VE") to establish whether such work exists and, in turn, whether the claimant is "disabled."  *Allen v. Sullivan*, 880 F.2d 1200, 1201-02 (11th Cir.1989) (per curiam). However,

> [w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the [ALJ]'s preferred method of demonstrating that the claimant can perform other jobs is through testimony of a VE.

*Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999) (citations omitted).  Reliance on the grids is proper where substantial evidence supports the ALJ's determination that the claimant's non-exertional impairments did not significantly limit his ability to perform specified types of work.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985) (per curiam).  According to the Social Security regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Substantial evidence supports the ALJ's finding that Ms. Castello did not suffer from non-exertional limitations that *significantly* impaired her ability to perform sedentary work.  The ALJ applied grid sections 201.27 and 201.28, which provide that a younger individual with a high school education or more, who is either skilled or semi-skilled is capable of sedentary work, so long as non-exertional impairments do not significantly limit basic work skills.  *Jones v. Apfel*, *supra*.  In determining plaintiff's RFC, the ALJ specifically stated that he had to consider all symptoms, including "restrictions due to pain or other symptoms," and found that plaintiff's claims of subjective complaints of pain to the extent of significantly limiting her ability to work were not credible (tr. 19, 20).  The clinical evidence in the record is almost devoid of positive medical findings.  Dr. Payne noted positive straight leg raising in April 2002, but his findings during Ms. Castello's next two visits were benign.  At her October 2004 visit to the emergency room all findings were essentially normal.  Even the x-ray and MRI findings were mild at worst.  The medical evidence supported the ALJ's finding that Ms. Castello's non-exertional

impairments would not significantly limit her ability to perform sedentary work. Therefore, the ALJ correctly relied on the grids to determine that Ms. Castello was not disabled.  See *Sryock*, 764 F.2d at 836.  She is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of February, 2009.

/s/ *Miles Davis*

MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).